B. C. STEVENS, Appellant, v. LOUIS BACHER, Respondent.

**St. Louis Court of Appeals.** Submitted on Briefs November 8, 1911. Opinion Filed December 5, 1911.

1. **TRIAL PRACTICE: Theory at Trial: Binding Effect: Cases Originating in Justices' Courts.** While that formality of pleading required in cases instituted in the circuit court is not required in cases originating before a justice of the peace, yet parties are as much bound in the one court as in the other by the theory upon which they try the case.

2. **REAL ESTATE BROKERS: Action for Commission: Procuring Cause of Sale: Instructions.** A real estate owner employed an agent to sell his property for $8000. The agent procured a buyer, who offered a lower price, which the owner refused to accept. The buyer then offered the agent $7500, but this offer was not communicated to the owner by the agent. The property was subsequently sold to the same buyer for $7500, through the efforts of another agent, the buyer paying him a commission of $200, but no commission being paid him by the owner. The latter did not know that the buyer was the same person who had made an offer through the first agent until the deed was ready to be executed. In an action for commission by the agent first employed, an instruction directing a verdict for defendant if the jury found that plaintiff was authorized to sell the property for $8000 and that it was sold for $7500 through the

efforts of another agent, even though plaintiff had shown the property to the purchaser and had tried to sell it to him for $8000, and an instruction directing a verdict for defendant if the jury found that plaintiff was not the efficient and procuring cause of the sale and that it was brought about through the efforts of another agent, even though the purchaser, prior to being induced to buy through the other agent, had been shown the property by plaintiff and had had dealings with him in relation to its purchase, were correct declarations of the law, under the facts of the case.

3. **HUSBAND AND WIFE: Liability of Husband as Wife's Agent.** Where a husband, as agent for his wife, placed her property in the hands of a real estate broker for sale, notifying the broker at the time that he was not the owner of the property, he was not liable to the broker for commissions.

4. **REAL ESTATE BROKERS: Commission.** The contract of a real estate agent is to procure a purchaser ready, willing and financially able to take the property at the price and on the terms the agent is authorized to impose, and when the agent introduces such a party to the seller and as a result of bringing the parties together a sale is effected, he is entitled to his commission.

5. **APPELLATE PRACTICE: Conclusiveness of Verdict.** A verdict is binding on appeal if supported by substantial evidence.

6. **REAL ESTATE BROKERS: Action for Commission: Sufficiency of Evidence.** In an action by a real estate agent for commission for effecting the sale of real estate, evidence *held* to support a verdict denying recovery.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

AFFIRMED.

*Stevens & Stevens* and *G. A. Stamm* for appellant.

(1) The contract of a real estate agent is to secure a purchaser ready, willing and able financially and otherwise, to buy the property, and when the real estate agent has obtained such a person and has introduced the parties for the first time, and has shown the prospective buyer the property, he is entitled to his commissions. Butts v. Ruby, 85 Mo. App. 405; Crone

v. Trust Co., 85 Mo. App. 601; Brennan v. Roach, 47
Mo. App. 290; Lemon v. Lloyd, 46 Mo. App. 452;
Wright v. Brown, 68 Mo. App. 577; Goff v. Gibson, 18
Mo. App. 1; Stinde v. Blesch, 42 Mo. App. 578; Grether
v. McCormick, 79 Mo. App. 325; Burns v. Moore, 112
S. W. 1002. (2) The fact that the purchase of the
property is subsequently made by that prospective
buyer, either directly with the owner, or by different
real estate agents without plaintiff's knowledge, does
not deprive the plaintiff of his commissions. Crone
v. Trust Co., 85 Mo. App. 601; Sallee v. McMurry, 113
Mo. App. 253. (3) Neither does the fact that the
property was, without plaintiff's knowledge, sold for
less than the price offered by the plaintiff, deprive
the plaintiff of his commissions. Stinde v. Blesch, 42
Mo. App. 578; Grether v. McCormick, 79 Mo. App. 325;
Cunliff v. Hausman, 97 Mo. App. 467; Crone v. Trust
Co., 85 Mo. App. 601. (4) Instructions unsupported
by the evidence should not be given. Beauchamp v.
Higgins, 20 Mo. App. 514; Johnson v. Kahn, 97 Mo.
App. 628; Sallee v. McMurry, 113 Mo. App. 269.

*Schnurmacher & Rassieur* for respondent.

(1) Instruction No. 2 for defendant was correct.
Wolff v. Rosenberg, 67 Mo. App. 403. (2) Instruc-
tion No. 3 was correct, because the undisputed fact
was that the property in question belonged to defend-
ant's wife, not to him; and the evidence tended to
show that he so stated to plaintiff's representative
and suggested to him that he confer with his wife
concerning the transaction, which said representative
said was not necessary. From this evidence the jury
had a right to infer that defendant was not acting for
himself but acting on behalf of his wife. (3) Defend-
ant's instruction No. 4 was properly given. Jones v.
Berry, 37 Mo. App. 128; Gamble v. Grether, 108 Mo.
App. 340. (4) Regardless of technical questions

concerning the instructions, the verdict and judgment were for the right party, and upon plaintiff's evidence alone the judgment should have been for defendant. Blackwell v. Adams, 28 Mo. App. 61; Gamble v. Grether, 108 Mo. App. 340.

REYNOLDS, P. J.—This action was commenced before a justice of the peace in the city of St. Louis, against Louis A. Bacher, defendant, plaintiff filing a statement before the justice in which it is set out that defendant had engaged plaintiff to procure for him a purchaser for certain property in St. Louis county, describing it, "then owned by defendant, and he promised and agreed to pay plaintiff a commission of five per cent upon the selling price of said property, in consideration of finding such purchaser which was then and there the reasonable value thereof." The statement further set out that in obedience to this employment plaintiff found a purchaser for the property at $8000; that thereby plaintiff became entitled to $400, the five per cent commission on the purchase price, and that although often demanded defendant had refused to pay this commission, for which he demands judgment with interest. Defendant interposed no written pleadings and at a trial before the justice plaintiff recovered. Defendant thereupon appealed to the circuit court where the cause coming on for trial before the court and a jury, a verdict was returned in favor of defendant from which plaintiff has duly appealed to this court, having filed his motion for a new trial and saved exception on that being overruled.

The errors assigned in this court by counsel for appellant are to the giving of three instructions at the instance of defendant. They are numbered 2, 3 and 4. The first of these, instruction No. 2, in substance told the jury that if they believed from the evidence that on a day named, defendant employed plaintiff as his real estate agent or broker, to sell for him the

property mentioned in the evidence, and that he placed the price of $8000 upon the property and agreed with plaintiff that if he found a purchaser for the property at that price, he would pay him a commission of five per cent on that sum, and if the jury found that plaintiff did not find a purchaser for the property at the price of $8000 and that as a matter of fact the property was sold for the price of $7500, through the efforts and agency of one Musick, then their verdict should be for the defendant, "even though the person purchasing at said sum of $7500 was a person whom plaintiff had theretofore brought to examine the property and to whom he had attempted to sell the same at the price of $8000."

Instruction No. 3, the second of these given at the instance of defendant, was to the effect that if the jury found from the evidence that at the time defendant authorized plaintiff to sell the property it belonged to his wife and not to him and that he was acting as agent for his wife in the transaction and informed plaintiff of these facts, the verdict should be for defendant.

The third of these instructions, numbered four, in substance told the jury that the burthen was upon plaintiff to prove, by a preponderance of evidence, that plaintiff was the efficient and procuring cause in the sale of the real estate mentioned from defendant's wife to one Gibert, and if they found from the evidence that plaintiff was not the efficient and procuring cause of Gibert purchasing the property but that the sale was brought about through the efforts and exertions of Musick, their verdict should be for defendant, "even though you may find and believe from the evidence that said purchaser, prior to being induced by said Musick, if you find he was so induced, had been shown the land by plaintiff and had dealings with him in relation to its purchase."

On behalf of plaintiff the court instructed the jury, in substance, that if they found from the evidence that defendant, on a day named, instructed or authorized plaintiff to find a purchaser for the property at a price then fixed, and that defendant was aware that plaintiff thereafter did make efforts to procure such purchaser for defendant, and they further found from the evidence that pursuant to such authority or instructions plaintiff, by himself or his employees, made one Gibert acquainted with the property and the condition upon which the same was to be purchased and introduced Gibert to defendant, and that in consequence of plaintiff's action in that regard Gibert was induced to purchase and did purchase the property, and if the jury further believed from the evidence that defendant agreed to pay plaintiff a commission of five per cent on a sale of the property, "then plaintiff is entitled to recover the amount sued for, and you should so find, even though said purchaser employed another agent to procure the property from defendant direct and though defendant may have sold said property to said Gibert at a price less that given to plaintiff."

Another instruction given at the instance of plaintiff was to the effect that if the jury found for plaintiff they should return a verdict for him "of five per cent on the amount paid by John S. Gibert to defendant for said property."

As defendant has not appealed, we are not concerned with plaintiff's instructions further than that they show the manner in which the trial court placed the law of the case before the jury.

It may be said at the outset that the action is brought by plaintiff on the theory of breach of contract. While in the statement of the case filed with the justice and upon which the case was tried before the circuit court, it is set out that the five per cent commission was the "reasonable value of the services," there

162 App.—19

was no evidence whatever offered in support of this, the case being tried throughout by both parties on the theory that it was an action on contract. That formality in pleading or statement of a case required in cases originating in the circuit courts is not required in actions instituted before a justice of the peace, but parties are just as much bound in one court as in the other by the theory upon which they try the case. There can be no question whatever in this case that it was brought and tried on the theory that there was a contract between plaintiff and defendant for the payment of five per cent upon the sale price of the property and that it was understood between plaintiff and defendant that the sale price was to be $8000. It is also clear that plaintiff himself did not understand that he had authority to sell at any less price than $8000. Thus it was in evidence that Gibert had offered $7200 or $7250 for the property. Plaintiff's agent, who conducted the negotiations for him, communicated this offer to defendant but defendant rejected it. It is also in evidence that Gibert then told this same agent that he would or that he might give $7500 for the property and that he told this to that agent when the agent, defendant and Gibert were together, but not in the hearing of defendant. It is uncontradicted that neither plaintiff nor this agent communicated this offer of $7500 to defendant then or at any other time. They were evidently acting on the supposition that it was useless to communicate any offer to defendant under $8000. The contract originally made between plaintiff and defendant, according to the testimony of plaintiff and his agent, was by telephone. Plaintiff, testifying, said that along in 1906, he had some talk with defendant about the sale of the property; that he had a buyer out there looking at it. Who this buyer was does not appear. There is no pretense that it was Gibert. There is no pretense that any results followed this and the matter was then dropped. Afterwards, in April, 1907, as

plaintiff testified, he called up defendant over the telephone and asked him if he still owned the property. Defendant answered, "Yes." Plaintiff asked him if it was for sale.  Defendant answered that it was. Plaintiff asked him the price and defendant said $8000. Plaintiff then said to defendant, "Will you pay me five per cent commission?" Defendant answered, "Yes." Plaintiff said, "Well, I have a prospective buyer for it and I will show him the property." According to plaintiff's agent this conversation took place after he, the agent, had shown the property to Gibert and after the agent had returned to the office of plaintiff.  He testified that he was there when his brother, the plaintiff, called up defendant and had the above conversation with him.  It was after this that the agent of plaintiff asked defendant for the keys or permission to show his customer, Gibert, though the premises, and that he, along with Gibert and his wife, went to look at the property.  Thereafter whatever arrangements were carried on with reference to the purchase by Gibert, so far as plaintiff is concerned, were through this brother and agent, beyond the fact that plaintiff appears to have demanded of defendant pay for his commission when he found that the property had been sold.  The brother testified that, as agent of plaintiff, he had taken Gibert and his wife out to look at the property and that Gibert had offered $7250 for it; that he had communicated this offer to defendant and he had refused it; that he had been trying to get Gibert to raise the offer so he could see defendant about it again; that Gibert had told him, plaintiff's agent, that he might give $7500 for it, but that he had not communicated the offer to defendant because he was trying to get Gibert up to $8000.  This agent, testifying, when asked why he didn't communicate it to defendant, said that he wanted to get it into shape; that there was no use going with anything like that; it was no direct offer, and that the best offer that he

had told defendant or his wife that he could get for the property was $7250; that that was the only direct offer that Gibert had made to him. Gibert, on his part, testified that he had made a definite offer of $7500 to plaintiff's agent for the property; that he had told this agent that he would give $7500 cash for it and that he told him that when he and the agent were on the premises and while defendant was also there present but that he had not made the offer in the hearing of defendant.

Defendant's version of the contract was to the effect that some one had rung him up on the telephone and asked him if he still owned the property and if it was still for sale and that he told this inquirer that it was; that the next morning plaintiff's agent came out and asked for permission to enter the house as he thought he had a buyer. Afterwards in his place of business in the city this same agent called on him again for an order for the key of the house, which it appears was in the possession of another party, the house being vacant, and defendant gave him an order on that party to allow him to inspect the premises and to give him the key. He told plaintiff's agent at that time that the property was for sale but that it was in his wife's name and asked this agent if he wanted to see her. The agent answered, "Well, it is not necessary." At the same time plaintiff testified that he told this agent that he had another agent, who was formerly with a real estate agency in St. Louis, and that other parties also had the sale of this property and that "whoever sold it got the commission." He testified that he told the agent that he had fixed it this way to avoid trouble with both of them. He further testified that this other real estate agency had the property included in its list of property for sale. Defendant was further asked if this agent of plaintiff had asked him at what price his wife was willing to sell the property. He said he did and that he told him at $8000;

that no other price had ever been given to plaintiff or his agent and that neither of them had ever asked for any other figure; that all that was said about it was that the price was $8000. It was after this that defendant or his agent had told him that he had an offer for it at $7200 or $7250, and that was all that plaintiff or his agent had ever offered or told him that they had been offered for the property, and he told them that he would not take that, because some one else had offered him $7500. Defendant testified positively that plaintiff or his agent had never reported to him that Gibert had authorized him to make an offer of $7500. A short time after plaintiff's agent had had this talk with defendant, it appears that Gibert met a Mr. Musick, an old acquaintance, and told him he was looking for county property, and mentioned this Bacher property as one he had seen and which he thought would suit him. Whereupon Musick called on defendant and asked him if the property was for sale and at what price. Defendant told Musick that it was for sale and that he wanted $7500 net cash free of commissions. Musick going to defendant's residence, a sales option was there drawn up and executed between defendant and his wife, on the one hand, and Musick on the other, by which defendant and his wife acknowledged having received from Musick $100 in cash on an option of purchase of the property for $7500 net to them. This paper appears to have been offered in evidence but is not in the abstract. It appears to have been the usual contract for a sale, the purchaser given a certain time to examine the title and complete the purchase, the seller acknowledging the receipt of the earnest money, which in this case was $100, and agreeing on payment of the balance of the purchase price to execute the necessary conveyance. The contract was in favor of Musick, he being named as the purchaser to whom the property was to be conveyed. Gibert was not named in this, nor referred to by either as prospective

purchaser. When Musick first approached defendant about this property, he tried to induce defendant to exchange it for city property which Musick controlled or in which he held equities. Defendant would not agree to anything of the kind but insisted that he and his wife would only sell this property for $7500 net cash. It was then that Musick closed the option contract and paid the earnest money and took up the matter with Gibert. Gibert agreed to purchase the property at $7700 and paid Musick $200 as earnest money. Musick then drew up a deed for the property, to be executed by defendant and his wife, conveying the property to Gibert and sent for them to come to his office, sign the deed and get the purchase money. Defendant and his wife went to Musick's office and there met Gibert. Defendant did not at first recognize Gibert as the man he had previously been introduced to by plaintiff's agent and who had been out at the property, but in the course of the conversation he remarked that "some shirt man" had been out to see the property in company with plaintiff's agent. Gibert then said that he was the man. Neither defendant nor his wife knew, until the deed was presented to them for signature and acknowledgment, that anyone other than Musick was the purchaser of this property and they ascertained for the first time that the real purchaser was Gibert when they went to Musick's office and were asked by Musick to execute the deed direct to Gibert. Having executed the deed, defendant and his wife received, as we understand from Musick, $7400 cash, which with the $100 previously paid them by Musick made the $7500 total net cash purchase price received by defendant and his wife for the property. Neither paid Musick anything. The grantors in the deed were described as "Amelia Bacher and Louis Bacher, her husband;" the wife signed it first and was named first in the certificate of acknowledgment. In short, it was the form of deed commonly

used when the conveyance is of the property of the wife. The deed was made to Gibert by direction of Musick to Bacher, in satisfaction of the option or agreement which Musick held. The consideration named in the deed was $8000. Defendant stated that Musick had explained to him that he stated the consideration as $8000; that this would make no difference to defendant and might be of some advantage to Gibert if he ever wanted to sell the property. There is no evidence that defendant and his wife received $8000 nor more than $7500 for this property.

These are substantially the facts in the case. Under them, we are of the opinion that it fails within the decisions of our court in Blackwell v. Adams, 28 Mo. App. 61; Wolff v. Rosenberg, 67 Mo. App. 403, and Gamble v. Grether, 108 Mo. App. 340. Under these decisions the second and fourth instructions given at the instance of defendant are correct. The second instruction is the converse of the first instruction given at the instance of plaintiff and is to be read with it. The second instruction given at the instance of defendant, that numbered three and which we have set out, is correct. It proceeds upon the theory that defendant being the agent of his wife, the real owner of the property, that agency known and disclosed, that whatever right of action plaintiff might have was against the wife, as principal, and not against the agent. It is settled law in this state that the contract of a real estate agent is to procure a purchaser ready, willing and financially able to take the property at the price and on the terms the agent is authorized to impose; that when the agent has introduced such a party to the seller and as the result of bringing the parties together, a sale is effected, he is entitled to his commission. But that was not found to be the fact here by the jury who heard the evidence and were properly instructed by the court. That verdict is binding on us if supported by substantial evidence. We have read

over the whole testimony in the case, as abstracted, with very great care and are satisfied that there is substantial evidence to support the verdict and that the case was tried without reversible error. The judgment of the circuit court is accordingly affirmed. *Nortoni* and *Caulfield, JJ.*, concur.