## C. C. McCORMICK, Respondent, v. J. E. OBANION, Appellant.

Springfield Court of Appeals, February 3, 1913.

1. **REAL ESTATE BROKER: Right to Commission: Must Fulfill Seller's Requirements.** The landowner may fix the price and terms on which he will sell, and unless the broker produces a purchaser ready, willing and able to buy at that price and on those terms, the landowner may refuse to sell and the broker is entitled to no commission.

2. ———: **Sale by Owner.** After allowing the broker every opportunity to make the sale on the terms fixed and the agent failing, the landowner may, as a new deal, sell the land to the same customer on more favorable terms and at a reduced price and not be liable to the broker for a commission.

3. **REAL ESTATE BROKERS: Failure of Seller to Restrict to Cash Sale.** The seller had a right to demand the entire payment of the purchase price in cash and to make that demand

even after the broker had procured a purchaser ready, willing and able to buy at the price named on other than cash terms. But unless the seller demanded a cash payment before the consummation of the transaction, the broker was not restricted to a cash sale, to be entitled to a commission.

4. BROKER'S COMMISSION: Executed Contract of Sale. There is a wide difference between cases where a sale is actually consummated and where commission is claimed even though the landowner refuses to make the sale.

5. PAYMENT: What is. Payment of a debt need not be in money, necessarily; anything of value upon which the parties agree is considered payment.

6. PLEADING AND PROOF: Immaterial Variance. The plaintiff must plead the ultimate facts upon which he relies for recovery and the proof must in all material respects conform to the allegations of the complaint. But an immaterial variance is not fatal.

7. CONTRACT; Should Plead as Modified. Where an original contract is modified by a subsequent agreement, the plaintiff should declare on the contract as modified and not on the original contract.

8. PARTIES TO A SUIT: Defect of. One Davis materially aided plaintiff in finding a purchaser for the land in question under an agreement with the plaintiff that he should receive half of the commission. Defendant contended that Davis was a necessary party to the suit. Davis' testimony was that he had no contract with defendant and expected no pay from him, but from plaintiff. *Held*, that Davis was not a necessary party to the suit.

9. PRINCIPAL AND SURETY: Recovery on Suretyship. A surety cannot recover from the principal until he first pays the surety debt.

Appeal from Lawrence Circuit Court.—*Hon. Carr McNatt*, Judge.

AFFIRMED.

*W. B. Skinner, McNatt & McNatt* for appellant.

(1) Where by the contract a person agrees to sell property for a certain sum of money, nothing short of cash payment at the completion of the contract is compliance with the terms. Freight Co. v. Standard, 44

Mo. 71. (2) If payment is to be made in other than money, it must be by agreement and pleaded, before evidence of the same be introduced. Moore v. Renick, 95 Mo. App. 202. (3) If time of payment is waived or extended, such agreement of extension or waiver must be pleaded, before any evidence of same can be introduced. Lanitz v. King, 93 Mo. 519; Larrow v. Bozarth, 68 Mo. App. 406. (4) Where there has not been a compliance of the contract, no action can be brought thereon. Veach v. Norman, 109 Mo. App. 387; Freeman v. Aylor, 62 Mo. App. 613. (5) Cannot plead one contract and show performance of another. Tausig v. Merc. Town Co., 124 Mo. App. 220; Koontz v. Car Co., 203 Mo. 259. (6) The fact that the owner consented to sell the property on different terms from that originally authorized to sell, even though the sale was procured by the broker, is not of itself sufficient acceptance of performance of the broker's obligation, to authorize a recovery on the contract. Reiger v. Fitzpatrick, 29 Mo. App. 421; Simmons v. Oneth, 140 Mo. App. 273; Cosgrove v. Leonard Merc. Co., 175 Mo. 110. (7) An agent authorized to sell real estate on cash payment is not complying with his authority if he sells on time, and it would be substantial variance and the agent could not recover. Harwood v. Tripplett, 34 Mo. App. 273; Jepson v. Marohn, 21 L. R. A. (N. S.) (S. D.) 935. (8) Where a broker sells property on different terms than the one originally authorized by the owner of property, it must be pleaded and proven, that the owner accepted the modified terms, as a compliance of the contract between the broker and the owner, to recover the stipulated amount of commissions. Blackwell v. Adams, 28 Mo. App. 62.

*H. H. Bloss* for respondent.

(1) If property is placed in the hands of a real estate dealer, he is entitled to his commission, if he

brings about the sale by his exertion, or if he introduces the purchaser, or gives his name, whereby the sale is perfected by the principal, even though the owner vary the terms from the first negotiations in order to affect a sale. Wetzell & Griffith v. Wagoner 41 Mo. App. 516; Larow v. Bozarth, 68 Mo. App. 406; Stinde v. Blesch, 42 Mo. App. 578; Gretcher v. McCormick, 79 Mo. App. 325; Crone v. Trust Co., 85 Mo. App. 607; Jones v. Berry, 37 Mo. App. 125, 128; Henderson & Jones v. Mace, 64 Mo. App. 393; Baucamp v. Higgins, 20 Mo. App. 514; Simmons v. Oneth, 140 Mo. App. 273; Sallee v. McMurry, 113 Mo. App. 253. (2) It is also held that in cases of executed sales, the broker is entitled to his commission based on the original contract of employment, where the owner himself varies the terms of the sale, at which he had authorized the broker to make it. The recovery in such cases is on the original contract. Wetzell & Griffith v. Wagoner, 41 Mo. App. 510; Henderson v. Jones & Mace, 64 Mo. App. 393; and other authorities above cited, under point one. (3) The principal cannot recover of the surety until he pays the surety debt. Herne v. Keath, 63 Mo. 84; Huse v. Ames, 104 Mo. 91.

STURGIS, J.—This is an action by the plaintiff as a real estate broker for his commission for selling the defendant's farm. The plaintiff recovered in the trial court and the case is here on appeal.

The petition, after stating that plaintiff was engaged in the real estate business and that defendant was the owner of the farm in question, charges as follows:

"That on the ——— day of June, 1911, he entered into a contract with the defendant, not in writing, whereby it was agreed that if the plaintiff would procure a purchaser for the defendant's farm, which was located about four miles south of the city of Aurora,

in Barry county, Missouri, that he, the defendant, would pay the plaintiff all that said farm sold for over and above the sum of $6000.

"That after the making of said contract, the plaintiff immediately went to work to secure a pur-chaser for said farm and who purchased the same at the agreed price and sum of $6800 whereby there became due from the defendant to this plaintiff the sum of eight hundred dollars which sum is now due and owing by the defendant to the plaintiff, and pay-ment thereof has been refused by the defendant though he has been requested to pay the same to the plaintiff."

The facts in regard to the transaction are about these: The plaintiff was engaged in the real estate business at Aurora, Missouri, and the defendant was the owner of a farm some three or four miles south of that town in Barry county. The plaintiff's version of the contract with reference to the sale of the land is that he met the defendant in Aurora, Missouri, and that defendant listed the farm with him for sale at $6000. After listing the property plaintiff asked de-fendant about the commission and defendant said that he would not pay a commission but would give plaintiff all over $6000 he could sell the farm for. With reference to this matter the defendant testified that, on meeting the plaintiff at Aurora, plaintiff asked him to give him a chance to sell his farm and defendant replied, "All right, sell it. I will give you a commission." Plaintiff then asked, "What is the least money it will take to buy your farm?" Defend-ant replied, "I will take $6000 clear cash money for the place." . . . "I meant for him to sell the place and leave me $6000 clear cash after the expenses were all paid."

After this arrangement was made the plaintiff took one Webbena, whose home was in Iowa, and showed him defendant's farm with the view of selling

it to him. They met the defendant at his farm and with reference to what then took place the defendant testified: "It went on then until he brought a buyer out there for me; brought Mr. Webbena and his wife, and looked over the place, and he praised the place up to them pretty high, and they could not agree for some time, and they did finally agree, so they told me, and agreed on $6800 in notes; three years after, some of them, one of them to be paid each year. Then he (plaintiff) called me to one side and said, 'We will sell your place that way.' I studied a few minutes and I considered this is necessary interest, and I thought this $800 will be his commission."

Defendant further explained that he understood that the $6800 was to be paid, $100 cash, $400 on the 15th day of November, and $2800 on January 12 following; and that at the time of this last payment he was to make a deed to the farm, deliver possession of it and take notes, secured by deed of trust, for the balance of the purchase money. On further examination defendant admitted that he agreed to sell his farm in this way and on these terms.

By agreement between the parties they met at an office in Aurora that same evening, when and where they drew up and signed the following contract:

"Aurora, Mo., June Seventh, 1911.

"This evidences a contract made and entered into the day and year above mentioned, by and between J. E. Obanion, of Barry county, Mo., party of the first part, and Fred Webbena, Martelle, Iowa, party of the second part. Which provides as follows to-wit:

"For and in consideration of the sum of $6800 (sixty-eight hundred dollars), to be paid by the party of the second part, as hereinafter provided. Said first party hereby agrees to bargain, sell and convey to, and hereby obligates himself to bargain, sell and

convey to, said second party the following described real estate being situated in Barry county, Mo., to-wit: The north half of the southeast quarter, and the southwest quarter of the northeast quarter of section number one, township number twenty-five, and range number twenty-six; also the northwest quarter of the southwest quarter of section six, township twenty-five, R. 25 west; of the fifth principal meridian, all in Barry county, Mo. And in consideration of the obligation on the part of the first party the said second party hereby obligates himself to pay said first party the sum of sixty-eight hundred dollars, in manner and form as follows, to-wit: One hundred dollars cash upon the execution of this contract, four hundred dollars, to be paid November fifteenth, 1911, for which a promissory note is to be made, twenty-eight hundred dollars, January the twelfth, 1912, at which latter date the party of the first part is to convey said land by good and sufficient warranty deed to said second party and to deliver to him the possession of said real estate. And the balance of said purchase money being $3500 is to be evidenced by four promissory notes, to be executed by said second party in the respective sums of $875. The first of said notes to fall due, November 15, 1912, and one each year thereafter, all of said notes to bear interest at the rate of 6 per cent per annum, said interest to be paid annually, and the said notes to be secured by a trust deed in the usual Missouri form on the real estate conveyed, said notes and deeds to be executed at the time of said warranty deed.

"In evidence of the foregoing agreement the said parties have hereunto subscribed their names, the day and year first aforesaid.

"J. E. OBANION (Seal).
"FRED WEBBENA (Seal).

"Witness:
"C. C. McCORMICK.
"A. M. DAVIS."

On the making of this contract it seems that the $100 in cash was paid and the note executed for the $400 to be paid November 15, 1911, and also the note for the $2800 due January 12, 1912, which were afterwards paid when due. After this was done the plaintiff said to the defendant that there is about $800 of this coming to us and the defendant replied, "Gentlemen, aren't you a little too fast. I was to have $6000 in cash." The evidence then shows that some effort was made to sell the notes for cash but without avail. Nothing was done further at that time about the commission. The defendant then made a deed to the farm to the purchaser and took his notes for the balance of the purchase money, secured by deed of trust on the land as provided in the contract.

At the time this suit was brought the defendant had received $3300 of the purchase money, had executed the deed to the purchaser and delivered to him possession of the farm and held four notes of $875 each, secured by a deed of trust on the land.

There is some question as to a counterclaim for $400 set up by the defendant, growing out of the fact that plaintiff collected the note for $400, the same being turned over to him for that purpose; and had used the money for his own private use, afterward borrowing a like amount on his own note, signed by the defendant as surety and which money was paid to the defendant; and also as to there being a defect of parties plaintiff, in that one Allen Davis was entitled to one-half of the commission due from the defendant. Leaving out of view for the present these collateral questions, the principal question to be solved is the right of plaintiff to recover his commission on the pleadings and facts as above stated.

Two reasons are advanced by defendant why plaintiff should not be allowed to recover: (1) That plaintiff is not entitled to any commission under the facts stated, because under the contract plaintiff was

not to have a commission, unless, through his efforts, the land was sold for over $6000, which, in the absence of any express agreement, the law construes to be six thousand dollars in cash; whereas the land was not sold for $6000 in cash but for the most part in notes. (2) That, conceding plaintiff's right to recover, he can not recover on this petition because he alleges his compliance with a contract to sell for more than $6000 (which will be construed to mean cash), and the evidence does not show a cash sale; that plaintiff cannot recover on the original contract (to sell for cash), but if he recovers at all it must be on the contract as modified by the parties, and this modification (from cash to credit) must be pleaded. Of these in their order.

I. In discussing the first proposition it must be kept in mind that plaintiff is suing on an executed contract of sale. The contract of sale was made directly by the seller with the purchaser and not by the agent and hence any alleged modification was made, if at all, by the defendant himself. There is much difference between this case, where the sale was actually consummated, and cases where the commission is claimed notwithstanding the landowner refuses to make the sale. There is no doubt but that the landowner may fix the price and terms on which he will sell, and, unless the broker produces a purchaser ready, willing and able to purchase at the exact price and on the exact terms imposed, the landowner may refuse to sell and no commission will be earned. Such are the cases of Harwood v. Triplett, 34 Mo. App. 273; Jepson v. Marohn, 21 L. R. A. (N. S.) (S. D.) 935, and cases there collated; and defendant in availing himself of the cases there cited should have noted the remark of the editor: ''It will be noted that a wholly different question is involved in those cases where the owner consummates the sale.'' So in this case, if the defendant had insisted that the contract meant $6000 in cash, as

he had a right to do (Southwestern Freight Co. v. Stanard, 44 Mo. 71, and Millan v. Porter, 31 Mo. App. 563, 574), and had refused to make a sale except for cash, no commission would be due the plaintiff for the simple reason that he had not complied with the terms of the contract.

It will also be noted that this is not a case where the owner insists in good faith on the exact price and terms of his contract and refuses to make a sale to the broker's customer on any modified terms, and, after fairly allowing the agent every opportunity of consummating the sale on the terms fixed and he has failed to make the sale, then as a new deal sells to the same customer at a reduced price or on more favorable terms; for in such cases no commission is earned. [Stevens v. Bacher, 162 Mo. App. 284 (141 S. W. 1143); Hughes v. Dodd, 164 Mo. App. 454 (146 S. W. 446); Blackwell v. Adams, 28 Mo. App. 61.]

In this case little if anything was said about modifying the terms of sale and there was little or no insistence on a cash payment. The broker and buyer evidently had some conversation about the terms of payment and reported to the defendant on what terms he could make payment. The defendant promptly and readily accepted the proffered terms. As defendant states it, "I studied a few minutes and I considered this is necessary (sic) interest and I thought this $800 will be his commission." He was getting $100 cash and was not to make a deed or surrender possession of the land till $3200 more was paid and the balance secured by this land. It would seem that the only thing to think about was the rate of interest. The defendant was evidently anxious to make the deal on these terms as the evidence shows that, on the $400 note becoming due in a short time, he unnecessarily became uneasy about its collection even before its maturity lest the buyer might prove insolvent, forfeit what he paid in cash by refusing

further payment, thus letting him keep the land and forfeit.

No objection was made as to the purchase price not being in cash until after the written contract above mentioned was executed and plaintiff spoke about his commission being due; and defendant then replied that he was too early as he had not received his money in cash. It is not necessary for us to decide whether the commission was then due or whether plaintiff must wait to see whether the other payments, provided by the contract to be made before the deed was to be executed and the sale consummated, were in fact made. Had the purchaser defaulted in these preliminary payments and proved insolvent it may well be doubted whether the commission would have been earned. This proposition finds support in the case of Reiger v. Bigger, 29 Mo. App. 421, which was a suit for commission where the purchaser defaulted. [See also Zeidler v. Walker, 41 Mo. App. 118; 19 Cyc. 252-3.]

It may also be mentioned in this connection that while payment ordinarily means in money and he to whom it is due may insist that nothing else is payment, yet, "The payment of a debt need not necessarily be in money, but anything of value which the parties agree shall be accepted or go in payment of a debt will be treated accordingly. Thus it is that a check or the note of a third person will, when so expressly agreed, be treated as payment or satisfaction of a debt. Our reports are full of such decisions." ' [Rider v. Culp, 68 Mo. App. 527, 530.]

In Millan v. Porter, 31 Mo. App. 563, 574, where the broker's contract was to sell for $4000, nothing being said as to cash or on time, the court said:

"Defendant takes the position that the price of the property was to be paid in cash and that the case is just the same as if he had instructed the plaintiff to sell for the price in cash. To this position we can-

not agree. Since the defendant fixed only *one* term of the proposed sale, all the other terms were left open to be afterwards fixed at his pleasure. He indeed had the right to demand the payment of the entire purchase price in cash, and to make the demand even after the plaintiffs had procured a purchaser ready, able, and willing to buy at the price named on other terms than a cash payment. But until a demand for a cash payment was made, the plaintiffs were not limited to such a payment; they were only required by their contract to find a purchaser at the price fixed by the defendant and on such terms in other respects as might be agreeable to the defendant.''

If this case be good law, and we think it is, it disposes of both contentions of the defendant, for the contract did not necessarily call for a cash sale, but left that to be adjusted between the owner and purchaser; and there was no *modification* of the contract by subsequent agreement but rather a making definite that which had been left open for future adjustment.

The law is well settled that where the owner consummates a sale to a purchaser produced by the broker, he is liable for the commission, although he voluntarily varies the original terms imposed on the broker. [Henderson v. Mace, 64 Mo. App. 393, 396; Wright & Orrison v. Brown, 68 Mo. App. 577, 582; Crone v. Trust Co., 85 Mo. App. 601, 606; Sallee v. McMurray, 113 Mo. App. 253 (88 S. W. 157); Simmons v. Oneth, 140 Mo. App. 269, 272 (124 S. W. 534); Wetzell v. Wagoner, 41 Mo. App. 509, 516; Grether v. McCormick, 79 Mo. App. 325, 332.]

This principle should certainly be applied to a case like this, where the owner at once and without objection or insistence on the rigid terms of the contract yields to the suggestion of the purchaser as to fixing the terms at deferred payments, instead of demanding all cash.

II.  On the question of pleading it will be observed that the petition alleges that defendant agreed that if plaintiff would procure a purchaser for his farm he would pay him all said farm sold for over and above $6000; and that he found a purchaser who purchased it at $6800.

If this pleading be taken at what the pleader intended and what would ordinarily be understood from reading it, it would be held to cover a sale either for all cash or all or partly on time.  [Millan v. Porter, 31 Mo. App. 563, 575.]

The rule of law is as contended by defendant, that, where the original contract is modified by a subsequent agreement, the plaintiff should declare on the contract as modified.  [Lanitz v. King, 93 Mo. 513 (6 S. W. 263); Taussig v. Mill & Land Co., 124 Mo. App. 209, 220 (101 S. W. 602).]

The reason given for this rule is that defendant is only called upon to refute the cause of action pleaded and cannot be expected to be ready to refute any different cause of action.  [Veatch v. Norman, 109 Mo. App. 387, 394 (84 S. W. 350).]

But we think this case does not come within that rule.  It is nearer a case of variance between the pleading and proof.  The gist of the action is the finding of the purchaser and the making of the sale for the sum agreed upon.  [Clifford v. Myer, 6 Ind. App. 633.]  The manner of making payment of the purchase price is not one of the ultimate material facts to be alleged.  The requirement is that plaintiff must plead the ultimate facts upon which he relies for a recovery, and the proof must in all material respects conform to the allegations of the complaint.  [19 Cyc. 275.]  The cases there cited show that it is not every immaterial variance that is held fatal.  In one case cited (Clark v. Allen, 125 Cal. 276, 57 Pac. 985) it is held that an allegation that a broker was employed to find a purchaser and did so, is satisfied by proof that

he found a person with whom the owner *exchanged* lands. This is nearer a variance from the contract sued on than is the case at bar. [See also Stinde v. Blesch, 42 Mo. App. 578.]

On the whole we think the ends of justice will be best served by refusing to let the case be stranded on so barren a technicality.

III. The other errors complained of are of less moment. As to a defect of parties plaintiff, it appears that one Allen Davis materially aided the plaintiff in finding the purchaser and that plaintiff promised him half the commission. He was a witness and testified that he had no contract with defendant and did not look to him for any pay, that the arrangement to divide the commission was altogether between him and plaintiff. This is sufficient to relieve defendant of any liability to him.

As to the counterclaim, the facts are that when the $400 note was about due defendant was fearful lest it might not be paid; and, to lend a sort of halo of innocent purchaser to it, it was arranged to indorse the note to plaintiff and let it go through the bank for collection. This was done and the note collected but the collecting bank deducted two dollars for its charges. Plaintiff used this money for his own private use, doubtless intending to apply it on his commission. On defendant's objection and demand of the money, plaintiff borrowed a like amount from the bank on his own note with defendant as surety and paid it over to defendant. This note was still in the bank unpaid at the time of trial and plaintiff acknowledged it as his note and offered to pay it if defendant would pay his commission. It goes without saying that the surety cannot recover of the principal until he first pays the surety debt. [Hearne v. Keath, 63 Mo. 84; Huse v. Ames. 104 Mo. 91 (15 S. W. 965).]

The trial court did right in holding that the defendant could not recover on this counterclaim.

No material error being found the judgment is affirmed. All concur.