OSAGE LAND COMPANY, a Corporation, Appellant, v. KANSAS CITY, MISSOURI, a Municipal Corporation.—No. 39235.—187 S. W. (2d) 193.

Division One, April 2, 1945.

Rehearing Denied, May 1, 1945.

*W. H. H. Piatt* for appellant.

*William E. Kemp,* City Counselor, and *Benj. M. Powers,* Assistant City Counselor, for respondent.

■ DALTON, C.—Action in equity by the condemnee in a condemnation proceeding to have the judgment, which determined the amount of compensation due plaintiff as such condemnee, declared a lien upon the land condemned, and for other relief. The trial court found that the judgment had been "fully paid and satisfied" and that plaintiff was "not entitled to assert any lien with respect to said land or any lien with respect to said judgment." Plaintiff has appealed.

Ordinance No. 1090 of Kansas City, under which the condemnation proceeding was instituted, was introduced September 3, 1929, passed September 16, 1929 and became effective September 26, 1929. The ordinance was amended on April 28, 1930, by Ordinance No. 1555. The condemnation proceeding was filed in the circuit court of Jackson County and benefits and damages were assessed by a jury. The verdict was approved and judgment entered on May 29, 1931. The judgment became final on September 23, 1931. It awarded $21,700.00

to plaintiff as compensation for lands condemned. The judgment provided that "Kansas City, Missouri, upon paying or causing to be paid the compensation assessed in and by the verdict of the jury, in these proceedings, have and hold for public purposes according to law, as specified in" the ordinances, the plaintiff's described land, "for public use for parkway purposes as an enlargement and extension of Brush Creek Parkway."

The present action was instituted on March 1, 1943. The second amended petition upon which the cause was tried alleged the passage of said city ordinances Nos. 1090 and 1555, the institution of the condemnation proceeding, the condemnation of plaintiff's land (described as tract No. 56 of the condemnation proceeding) and the award of compensation to plaintiff in the sum of $21,700.00. Plaintiff charged that defendant had failed, refused and neglected to collect certain assessments ▮▮▮ against property in the benefit district, as established and provided by the ordinances; that defendant had failed and refused "to pay plaintiff after demand said just compensation of $21,700.00 and interest so awarded and promised to it"; and that, although defendant had "paid on account thereof sundry sums," defendant still owed plaintiff $23,295.21 with interest at eight percent. Plaintiff prayed that said sum of $23,295.21 be declared "a lien upon and against all of the lands taken and condemned"; "that execution issue against said lands and the city of Kansas City, Missouri"; and "for such other and further relief as to the court may seem just and proper."

Defendant's answer admitted the condemnation of plaintiff's property, and the award to plaintiff of $21,700.00 "to be paid in lawful money of the United States," but denied "that it divested said lands of plaintiff till October 3rd, 1932." Defendant further denied that plaintiff was entitled to interest on its award of compensation, denied that at any time since October 3, 1932 it had paid plaintiff any sum on account of said judgment, and denied that it owed plaintiff any sum or had deprived plaintiff of its property without just compensation. Defendant alleged the execution of a written receipt in full by plaintiff, and pleaded "payment, accord, satisfaction and discharge of all liability," estoppel, laches and, further, the ten year statute of limitation as applicable to the cause of action, the judgment and the land condemned.

By reply plaintiff admitted that "it signed an instrument of writing dated September 24, 1932, reciting receipt of $21,700, in full payment of Tract 56, Brush Creek Parkway," but denied that said writing acknowledged "full satisfaction, accord and discharge of all claims for said condemnation award." Plaintiff alleged that said writing on its face was insufficient "to constitute accord and satisfaction." Plaintiff admitted that on October 3, 1932, it received "$5,402.22 from defendant in cash on account of said award for its land," ad-

mitted that it received 16 Park Fund Certificates, Series A-27 and still had them, but denied that it accepted said 16 certificates at a value of $1,000 each "in part payment of its award of damages made in said condemnation case." Plaintiff further alleged that "defendant represented, when said instrument was submitted to plaintiff . . . that it guaranteed the payment of plaintiff's award with interest, and that as a guarantee thereof deposited said certificates." Plaintiff alleged that on October 3, 1932, defendant "arbitrarily, unlawfully, in excess of and abuse of defendant's authority and power without due process of law, arbitrarily deducted and confiscated and withheld from plaintiff without plaintiff's consent $297.78, which defendant then and there falsely alleged, claimed and pretended to pay to said county collector as taxes on and against said 'Tract 56.'" Plaintiff further alleged that "when defendant obtained plaintiff's signature to the condemnation receipt dated September 24, 1932, plaintiff did not know and since this action was filed first learned" certain facts, therein set out. The 16 certificates mentioned, supra, were not tendered back, nor was there any allegation that the writing signed by plaintiff was void or should be cancelled or set aside. In view of the conclusions we have reached, we need not mention other allegations of the rather extended reply.

The ordinances mentioned, supra, provided for the condemnation of one hundred and six tracts of real estate and the assessment of special benefits against real estate in a benefit district. The total compensation awarded by the jury was $213,009.16, and the total special benefits assessed in favor of Kansas City against property in the benefit district was in the same amount, $213,009.16. The special benefits assessed were payable in ten annual installments commencing on June 30, 1932. These benefit assessments could be paid without interest, if paid in 60 days after the judgment was entered and, thereafter, with interest due and payable annually at six percent and, if not paid at maturity, at the rate of eight percent per annum until paid. Within 60 days after the judgment was entered, a total of $56,234.15 of the special benefit assessments were paid, and $3,586.88 of such benefit assessments were offset against awards, leaving a balance of $153,188.13 unpaid.

For the purpose of raising funds with which to pay this balance due for the lands condemned, the city, on December 21, 1931, passed ordinance No. 2751 authorizing, under the terms of its charter, the issuance of 154 park fund certificates, 153 for $1,000 each and one for $188.13. The ordinance provided that each certificate should have 20 coupons attached, one ▋ to. be detached and turned in by the certificate holder at each semi-annual distribution date, in January and July of each year, for the pro rata distribution of funds collected on the special assessments in said benefit district. The park fund certificates were not direct obligations of the city, but each certificate entitled the bearer, or registered holder thereof, as the case

might be, to his pro rata share of the unpaid benefits, with interest thereon, as collected. The director of finance was authorized to sell the certificates and apply the proceeds to the payment of the awards of compensation for the land condemned, or to turn the certificates over to the owners of such property, by agreement, in part payment of the compensation allowed therefor. Previously, such certificates had been readily salable to investors as desirable securities, but they were not so salable when issued on January 5, 1932, particularly in view of the general financial depression. The value of the certificates was further dependent upon the value of the land against which the assessments were made, the amount of the assessments and the ability of the landowners to pay. There was evidence that much land in this benefit district was already subject to delinquent taxes. Being unable to sell the certificates, the city in October 1932 purchased 24 of the $1,000 certificates with "water department miscellaneous deposit" funds and, from this money and the cash collected on assessments during the previous year, the city paid all small awards in full and then undertook to pay off the larger awards, part in cash and part in certificates.

Apparently, the city was not able to settle with all of the larger award holders on the basis of part cash and part park fund certificates, because it is admitted that on November 22, 1933, the city "paid into court in the clerk's office $30,210.83 to pay awards in this case in full and enumerated certain awards," but none of this fund was applied to plaintiff's judgment.

By ordinance No. 7789, passed June 7, 1943, the city transferred $15,300 from the contingent fund to a special fund to be used to purchase outstanding park fund certificates, where the owners were willing to sell at such discount or discounts as the director of finance deemed advantageous.

By ordinance No. 7814, passed June 28, 1943, the director of finance was authorized to pay all delinquent special assessments, levied in the original condemnation proceeding, which were for a face amount of less than $25.00, together with accrued interest. The director of finance was further authorized to cause special execution to issue on the remaining unpaid special assessments and $48,487.22 from the city's contingent fund for 1943 was ordered transferred to a special account for the purpose of making the payments specified.

On October 3, 1932, more than three years and four months after the judgment was entered, the city delivered 16 park fund certificates to plaintiff, together with a city warrant for $5,402.22 payable to plaintiff and a city warrant for $297.78 payable to the county collector (for taxes which had accrued against plaintiff's property) and plaintiff executed and delivered to the city an instrument in writing, entitled: "Condemnation Receipt, Condemnation Ordinance No. 1090, and No. 1555, office of director of finance." The instrument was dated

at Kansas City, Missouri, September 24, 1932 and read in part, as follows: "Received of Kansas City, Mo., Twenty One Thousand Seven Hundred and no/100 Dollars, Full payment of the damage award for the property taken by Kansas City, under the above numbered ordinance, as fixed by a verdict of jury in the Circuit Court of Jackson County, Mo., Cause Number 318973 same being on account of the condemnation proceedings to condemn lands for public use as extension to Brush Creek Parkway Tract No. 56 (plaintiff's tract being particularly described) . . . and we hereby certify that we are the owners of said award having acquired the interest of all persons named as parties thereto, and we hereby convey all our interest in the property so condemned and agree to surrender possession of the same to the city at once. Osage Land Company, by M. Spitcaufsky, President."

On October 3, 1932, the city further paid to plaintiff $107.00 on principal and $15.68 interest, or a total of $122.76 on each of the 16 park fund certificates. To obtain this payment, which constituted the first semi-annual distribution on each certificate, the plaintiff endorsed and delivered to the city the first coupon from each certificate. The total payment to plaintiff on these coupons on said date was $1964.16.

It was admitted that, on or prior to the delivery of said "Condemnation Receipt" ■■■ and the acceptance of said park fund certificates, the plaintiff was required to and did furnish to the city a certificate of title to the property condemned, showing the amount of delinquent taxes. The certificate showed the amount of such taxes as $297.78 and this sum was paid to the collector. The amount paid included the taxes on the entire 40 acre tract owned by plaintiff, although only 11 acres out of the tract were condemned and taken.

The evidence further showed that the 16 certificates delivered to plaintiff on October 3, 1932 were payable to bearer and were never registered in plaintiff's name, but that plaintiff semi-annually, after the receipt of the certificates, presented the coupons and, thereafter, the certificates and received the semi-annual pro rata distribution of principal and interest collected on the special assessments, amounting to a total of $13,320.64. There was also evidence that at the time of the trial $5,167.20 of moneys collected or appropriated by the city was allocated to plaintiff and available for distribution on the park fund certificates held by plaintiff. Plaintiff admitted the receipt of a total of $19,020.64 from the city, but contended the entire payment was received as payment on the judgment and interest, and that a balance of $23,438.39 remained due and unpaid on the judgment. No payment was ever entered on the records of the circuit court and the judgment entered May 29, 1931 was unsatisfied of record, as far as plaintiff's award was concerned.

Concerning the receipt and retention of the park fund certificates, John Spitcaufsky, acting vice-president of plaintiff, testified in part as follows, that the city manager of Kansas City told him "this was stocks, and everybody was signing things like that"; that witness talked to the city manager and the associate city counselor; that it was explained to him "that everybody was going to have to take those certificates, everybody that had anything in it"; that the manager insisted that he take them because everybody was taking them; and that believing such to be true was one of the reasons he accepted them.

The witness further testified that, if he had known the city had the money and was paying others in full, "we would have insisted on them paying all of the cash"; that the certificates were "forced on us" (plaintiff); that "we have taken them and we expected to get out money, and we didn't"; that plaintiff retained the certificates; that "they (the city) kept paying on them"; that when it "looked like it wasn't going to pay out, I came to you" (plaintiff's attorney); and that "we used to borrow money against these things (the certificates) from the bank and, in the last three years, the bank refused to loan us money on them, because they say they were no good." Much of the witness's testimony concerning promises and representations by city officers was stricken out on motion.

Plaintiff further contended, and its evidence tended to show, that when it received the 16 park fund certificates it did not investigate the financial condition of the benefit district; and that it didn't know any of the following alleged facts, towit, that interest was due on the award; that $59,821.03 of benefit assessments had been paid in cash or by offsets during the preceding year; that the city had been unable to sell the certificates; that the city had purchased 24 of the certificates; that the city had paid, all small awards in full in cash; that the benefit district was subject to excessive tax delinquencies; that the certificates "were unactionable, conditional payment obligations only"; or that the special assessments and the certificates were already in default. On the evidence presented, plaintiff also contended that on October 3, 1932, when the 16 certificates were delivered to plaintiff, $1600.00 of principal and $1100.22 of interest was due on the 16 certificates ($100 principal and $68.76 interest on each certificate) or a total of $2700.22; and that, since only $1964.16 was paid on that date, the 16 certificates were actually $736.06 in default when delivered. Other facts will be stated in the course of the opinion.

Appellant (plaintiff) has made 33 assignments of error, but only 17 subheads appear under points and authorities, and only 9 of these are supported by the citation of authorities. Appellant contends that the court erred in finding the award had been "fully paid and satisfied." Appellant insists that it is entitled to the full payment of its award with interest from the time of the taking, which it fixes

as September 3, 1929, when the ordinance was first introduced. Appellant argues that "private property shall not be taken for public use without just compensation first paid therefor"; that "the condemnation receipt does not acquit and satisfy the ▮▮▮▮ award and interest"; that "interest is allowable on the award and must be paid as a part thereof"; that "until the payment of just compensation in lawful money with interest, right and title remains in appellant"; that the city was "not empowered to pay" just compensation awards with park fund certificates; that the ten year statute of limitations does not bar payment of just compensation for property taken for public use; that the benefit assessments and the awards drew six percent interest from June 29, 1931, and eight percent after default until paid; and that until "appellant is paid its award in full in lawful money, with all interest . . . it is not divested of its equitable right and title to a vendor's lien." Appellant also complains (1) of the selection, preferment and payment of the small awards in full in cash from funds paid in on assessments within the first 60 days after judgment; (2) of the unequal and unjust treatment of appellant and the "conversion of appellant's ten percent interest in the benefits collected and paid . . . to preferred tract holders"; (3) of the issuance of park fund certificates after the "cream" of the assessments had been paid off; (4) of the deficiencies and delays in the collection of assessments and in the payment of the certificates; (5) of the failure of the city to issue special execution to collect the unpaid assessments; and (6) of "the appropriation of $48,487.22 to pay delinquent assessments of less than $25.00."

▮▮▮ We will assume, without deciding, that appellant's position is well taken on all of the matters mentioned, except as to the payment, satisfaction and discharge of the judgment, and we will determine whether the evidence is sufficient to show that the judgment has been paid and discharged. It is well settled that payment of a judgment may be made in other than in lawful money and where personal property of substantial value is, by agreement of the parties, accepted in full payment and satisfaction of a judgment, the judgment is as effectively extinguished as by the full payment thereof in money. Weston v. Clark, 37 Mo. 568, 572; Bushong v. Taylor, 82 Mo. 660, 671; Hickox v. McKinley (Mo. App.), 236 S. W. 1068, 1070; Freeman on Judgments, 5th Ed. Vol. II, p. 2325, Sec. 1116; 34 C. J. 687, Sec. 1059. See, also, Riggs v. Goodrich, 74 Mo. 108, 112; McCormick v. Obanion, 168 Mo. App. 606, 153 S. W. 267; Rider v. Culp, 68 Mo. App. 527, 530; Buxton v. Debrecht, 95 Mo. App. 599, 606, 69 S. W. 616; Vance v. McHugh, 187 Mo. App. 708, 715, 173 S. W. 80, 82; Sutton v. Libby (Mo. App.), 201 S. W. 615, 617; 40 Am. Jur. 739, Sec. 40, p. 748, Sec. 52; 48 C. J. 608, Sec. 39, p. 627, Sec. 62.

▮▮▮ As stated, the city was expressly authorized by its charter, Art. VI, Sec. 181 et seq., and by ordinance No. 2751 to issue park fund

certificates under the circumstances shown in evidence and to use them, by agreement, in payment "for land purchased or condemned for public purposes, for the establishment of which the special assessments were made on which such certificates" were issued. It is conceded that appellant could have insisted upon the payment of its judgment in full in lawful money, but it did not do so. Instead, plaintiff voluntarily executed and delivered the condemnation receipt, set out supra, and received the 16 park fund certificates of $1,000 each and the 2 warrants, one for $5,402.22 and one for $297.78, and thereupon acknowledged full satisfaction of the judgment. The written instrument, admittedly executed and delivered by appellant to the city, contained a specific description of the real estate and also words of conveyance, towit, "we hereby convey all our interest in the property so condemned and agree to surrender possession of the same to the city at once." The instrument further contained the words, "received of Kansas City, Mo., Twenty One Thousand Seven Hundred and no/100 Dollars, Full payment of the damage award for the property taken by Kansas City, under the above numbered ordinance, as fixed by the verdict of a jury."

We think it is clear from the evidence that by agreement of the parties the park fund certificates were accepted in part payment of the award and that the payment of the delinquent taxes out of the award was also by agreement of the parties. We do not need to determine the question of interest, if any, due on the award. However, see Brunn v. Kansas City, 216 Mo. 108, 115 S. W. 446; Jasper Land and Improvement Co. v. Kansas City, 293 Mo. 674, 239 S. W. 864, 866. While the written receipt contains no direct reference to interest, if any, due upon this award, it does evidence an intent and purpose to release and convey the particularly described real estate to the city and to acknowledge satisfaction in full of the award of compensation for the property taken. The evidence shows that the city did not go into possession of the property, until after the receipt was signed and delivered, and it should be noted that the park fund certificates, which were delivered to appellant, entitled the holder to his pro rata share of principal and interest collected on the special assessment. Appellant received its share of this principal and interest (then collected by the city) immediately after receiving the certificates.

The evidence, therefore, satisfactorily establishes that, on October 3, 1932, the appellant took the park fund certificates and other payments tendered by the city and accepted them in full payment, satisfaction and release of the award; and that appellant in writing acknowledged satisfaction in full of this award of compensation for its property and voluntarily released and surrendered possession thereof to the city. Accordingly, appellant is not entitled to an

equitable lien upon the described real estate nor to any relief in equity with respect to said award.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.